UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | 2:15-cr-00069-JDL |
|  | ) |  |
| VICTOR LARA JR., | ) |  |
| Defendant. | ) |  |

**ORDER ON DEFENDANT'S MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATION**

Following a jury trial held in September 2016, Victor Lara was convicted of conspiracy to commit Hobbs Act Robbery and of using a firearm during and in relation to a drug trafficking crime or a crime of violence. ECF No. 240-1. Lara subsequently moved to dismiss the indictment against him on the basis that his right to a speedy trial under the Speedy Trial Act, 18 U.S.C.A. § 3161 *et seq.* (2017), and under the Sixth Amendment to the United States Constitution had been violated. *See* ECF No. 301. For the following reasons, I deny the motion.

I.     BACKGROUND

Lara was arrested on state charges related to his federal offenses in August 2014. He was held in state custody until being arrested on the federal charges underlying the instant case in March 2015. Lara was indicted on the federal charges along with two co-defendants. The case was tried before a jury in September 2016. One of the co-defendants proceeded to trial with Lara and was also convicted of

conspiracy to commit robbery, among other offenses, while the third co-defendant pleaded guilty and testified on behalf of the Government at the trial.

## II. DISCUSSION

Lara argues for dismissal based on both the Speedy Trial Act and on the Sixth Amendment. He concedes in his reply briefing, however, that his claim under the Speedy Trial Act is untimely. ECF No. 315 at 1; *see also* 18 U.S.C.A. § 3162(a)(2) (2017) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."). Because Lara has waived any claim under the Speedy Trial Act, I address only his Constitutional argument.

### A. Sixth Amendment Speedy Trial Right

Courts examine four factors to determine whether a defendant's right to a speedy trial under the Sixth Amendment[1] has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right, and (4) the prejudice to the defendant caused by the delay. *United States v. Irizarry-Colón*, 848 F.3d 61, 67 (1st Cir. 2017) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No one factor is dispositive; courts are instructed to "weigh all of the factors collectively before deciding whether a defendant's right to a speedy trial has been violated."

---

[1] The text of the Amendment reads as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

2

*United States v. Dowdell*, 595 F.3d 50, 60 (1st Cir. 2010) (quotation omitted). I turn to consider each factor.

### 1. Length of the Delay

Assessing the length of the delay involves a double inquiry: first, the delay must cross the threshold of being "presumptively prejudicial" in order to trigger the Constitutional speedy trial analysis and the weighing of the four factors defined above. *Irizarry-Colon*, 848 F.3d at 68. If the delay crosses this threshold, then the extent to which it stretches beyond the bare minimum required to trigger the analysis is one of the factors considered in the balancing test. *Id.* "Delay of around one year is considered presumptively prejudicial, and the presumption that delay prejudices the defendant 'intensifies over time.'" *United States v. Carpenter*, 781 F.3d 599, 610 (1st Cir. 2015) (quoting *Doggett v. United States*, 505 U.S. 647, 652 and n.1 (1992)).

Lara contends that the length of the delay in his case should be measured from the time of his arrest on the related state charges in August 2014, which would result in a delay of approximately 25 months. The First Circuit has held, however, that the dual sovereignty doctrine dictates that a defendant's federal right to a speedy trial attaches upon the federal accusation or arrest. *See Dowdell*, 595 F.3d at 61-62. Lara argues that the First Circuit's decision in *Rashad v. Walsh*, 300 F.3d 27, 36 (1st Cir. 2002), supports the inclusion of his time in state custody in the speedy trial analysis.

In *Rashad*, the court held that the defendant's time spent in state custody prior to his federal indictment did not count in the speedy trial analysis because the state detention was unrelated to the incident underlying the defendant's speedy trial claim. *See* 300 F.3d at 36. The court stated that "the fact that the petitioner was in state

3

custody prior to his indictment is of no consequence unless that detention was related to the charges on which his speedy trial claim is based." *Id.* Lara relies on this statement to argue that if the state detention is related to the same incident that results in later federal charges, then the time spent in state custody should count in the speedy trial analysis.

Lara's interpretation of *Rashad* is foreclosed by the First Circuit's later decision in *United States v. Dowdell*. The defendant in *Dowdell* was the subject of a federal drug investigation. 595 F.3d at 52. He was indicted on state drug distribution charges arising out of the federal investigation in March 2002. *Id.* at 53. The federal government filed charges arising out of the same incident in November 2004. *Id.* The defendant eventually filed a motion to dismiss on speedy trial grounds, and argued that the length of the delay should be measured from the state indictment in March 2002 because the "state charges arose out of a federal investigation, were for the same offense as his federal charges, and were allegedly dismissed following a coordinated effort with the federal government." *Id.* at 62. The court rejected this argument, holding that Supreme Court precedent on the dual sovereignty doctrine compelled the conclusion that "[t]he speed of a federal trial is measured from the federal accusation on which it is based; one sovereign's enforcement of its own criminal laws is not attributable to another sovereign merely because of the presence of investigatory assistance, prosecutorial collaboration, or overlap among charges." *Id.*[2]

---

[2] The statement from *Rashad* on which Lara relies can be reconciled with the later express holding of *Dowdell* if interpreted to refer to the specific "charges" on which a defendant is brought to trial, as opposed to separate state charges arising out of the same incident. *See Rashad*, 300 F.3d at 36. To the extent they are contradictory, I am bound to follow *Dowdell*'s explicit holding rather than the statement from *Rashad*, which is technically dicta.

4

Based on *Dowdell*, the delay in Lara's case must be measured from his federal arrest in March 2015. Lara was therefore detained for 17 months and 20 days before his trial commenced in September 2016.

As the Government concedes, a delay of 17 months and 20 days is presumptively prejudicial and triggers the four-factor weighing analysis. *See Carpenter*, 781 F.3d at 610. The delay, however, stretched less than six months beyond the bare minimum necessary to trigger the analysis. *See Irizarry-Colon*, 848 F.3d at 68. A delay of this extent is not by any means surprising in light of the fact that the case was complex and involved numerous counts and two other co-defendants. *See United States v. Worthy*, 772 F.3d 42, 49 (1st Cir. 2014) (recognizing that number of defendants and complexity of the case may excuse longer delay); *see also United States v. Casas*, 425 F.3d 23, 36 (1st Cir. 2005) (recognizing "large and complex nature of the proceedings" as "compelling reason" for lengthy delay). The length-of-delay factor, therefore, supports Lara's speedy trial claim, but only to a modest degree.

**2. Reason for the Delay**

The First Circuit has described the second factor—the reason for the delay— as the "focal inquiry" of the analysis. *Worthy*, 772 F.3d at 48-49 (quotation omitted). The delay between Lara's federal arrest and his trial in this case was primarily attributable to pre-trial motions and motions for continuances filed by his two co-defendants and by Lara's unsuccessful motion to sever.[3] The Government filed for

---

[3] Lara's co-defendants filed multiple motions to extend time for filing pre-trial motions (ECF Nos. 64, 69, 82), a motion to reopen a detention hearing (ECF No. 73), a motion to suppress (ECF No. 77),

extensions of time to respond to several of the motions as well as a motion to continue, and Lara filed a motion in limine in addition to his motion to sever, and joined in a partial motion to dismiss filed by one of his co-defendants.

Delays attributable to co-defendants typically count against the defendant in the speedy trial analysis. *See United States v. Vega Molina*, 407 F.3d 511, 533 (1st Cir. 2005) (weighing reason-for-delay factor against defendant where delay was attributable "to the needs of codefendants, rather than any slothfulness on the government's part"); *see also Casas*, 425 F.3d at 34 (weighing factor against defendants where delay was "due in large part to the resolution of pre-trial matters concerning [defendants] and their co-defendants"). Lara's position is atypical, however, in that Lara himself did not file extensive pre-trial motions, objected to the continuances requested by his co-defendants, and sought to have his case severed from theirs in order to proceed to trial sooner. *Compare Worthy*, 772 F.3d at 49 (noting that defendant "himself was responsible for many of the pretrial motions"); *Casas*, 425 F.3d at 34-35 (noting that "at least some of the delay . . . was attributable to their own actions"). It should be noted, however, that Lara's unsuccessful motion to sever did require approximately four months to fully brief and decide.

Although Lara does not bear responsibility for the delays caused by his co-defendants, neither does the Government. Weighing this factor in Lara's favor would require a finding that the Government acted in bad faith, or at least negligently, to delay the trial. *See Worthy*, 772 F.3d at 49 (refusing to weigh delay against

---

motions to sever (ECF Nos. 94, 109), a partial motion to dismiss (ECF No. 112), motions in limine (ECF Nos. 125, 126), and a motion to continue the trial date (ECF No. 165). One of the co-defendants also filed a change of plea after agreeing to cooperate with the Government (ECF No. 179).

government where it did not result from "prosecutorial bad faith"); *Casas*, 425 F.3d at 34 (noting that defendants did not allege "bad faith effort by the government to delay the proceedings"); *United States v. Santiago-Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) (refusing to weigh delay against government where there was no evidence of government "misconduct or negligence"); *cf. Doggett*, 505 U.S. at 657 (noting that "[a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still" weighs against the government). Lara points to no evidence that the Government acted in bad faith or negligently to delay the trial. For that reason, the reason for the delay factor weighs against Lara's claim.

### 3. Defendant's Assertion of the Right

The Government concedes that Lara repeatedly asserted his right to a speedy trial. Lara consistently objected to his co-defendant's motions for continuances, as well as the Court's Speedy Trial Orders, and moved to sever his case in order to facilitate a prompt trial. This factor weighs strongly in Lara's favor.

### 4. Prejudice Caused by the Delay

In *Barker v. Wingo*, the seminal case on Sixth Amendment speedy trial rights, the Supreme Court said that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532. The Court went on to enumerate three such interests, including the need to prevent oppressive pretrial incarceration, the need to minimize anxiety and concern of the accused, and the need to limit the possibility that the defense will be impaired. *Id.* The Court also stated that the third of these interests—avoiding impairment to the accused's defense—is the "most serious." *Id.*

7

Lara identifies three sources of prejudice arising out of the delay that preceded his trial. First, he asserts that while he was awaiting trial, a key witness died. Second, he asserts that the delay enabled the Government the opportunity to secure the cooperation of one of his co-defendants, who provided inculpatory testimony against Lara at trial. Finally, Lara points to the prejudice inherent in pretrial incarceration.

The parties have stipulated that the deceased witness identified by Lara died in December 2014. *See* ECF No. 314. Because the death took place before Lara's federal arrest in March 2015, and therefore before his speedy trial clock began to run, the unavailability of the deceased witness at trial was not prejudice that arose from the pre-trial delay. *See United States v. Muñoz-Franco*, 487 F.3d 25, 61 n.38 (1st Cir. 2007) (noting that witnesses identified by defendants had died "prior to indictment and, consequently, their unavailability does not implicate the Sixth Amendment analysis under *Barker*").

Lara's argument regarding the decision of his co-defendant to cooperate with the Government is equally unavailing. The First Circuit has noted that the potential strength of the Government's case, as opposed to impairment to the accused's defense, is not the sort of prejudice that the speedy trial right is designed to protect against. *See United States v. Trueber*, 238 F.3d 79, 91 (1st Cir. 2001) ("[Defendant] does not point to a single authority to support the novel proposition that the potential strength the government's case may acquire over time amounts to prejudice against the defendant."). Indeed, the Supreme Court has recognized in the speedy trial right context that pretrial delay is often justified because "[t]he government may need time

to collect witnesses against the accused." *See Doggett*, 505 U.S. at 656. Other circuits have explicitly held that the cooperation of co-defendants "is not the sort of prejudice contemplated by *Barker*'s fourth factor." *United States v. Abad*, 514 F.3d 271, 275 (2nd Cir. 2008); *accord United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009). Lara does not identify any case law to the contrary. *See* ECF No. 301 at 6-7. Therefore, the fact that the Government was able to secure the cooperation of a co-defendant before trial does not demonstrate prejudice suffered by Lara as a result of the delay.

Lara's final assertion of prejudice is that of "lengthy and oppressive pretrial incarceration," with its attendant anxiety and uncertainty as to when and how his case would be resolved. ECF No. 301 at 7. Lara also notes that while incarcerated he was diagnosed with, and treated for, cancer, although neither his motion to sever nor any of the objections he filed to the Court's speedy trial orders made mention of his illness.

The First Circuit has recognized that "anxiety is a normal part of the pendency of criminal charges," and a defendant must therefore identify "undue pressures" in order for anxiety to become a sign of prejudice. *Carpenter*, 781 F.3d at 615 (quotation omitted). Lara has submitted a letter in which he describes the hardship he faced in dealing with his cancer diagnosis and treatment while in pretrial incarceration. The anxiety he describes, however, is that which is normally experienced by someone who is incarcerated and dealing with a serious illness. Moreover, Lara does not suggest how any such anxiety would have been alleviated by proceeding to trial—and being

9

convicted—in a more timely manner. *See id.* (noting that defendant failed to show how his situation would have been different "in the wake of a speedier conviction").

Lara further suggests that witnesses' memories may have faded and their stories may have changed over time. The Supreme Court has recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655. The Court also noted, however, that "presumptive prejudice cannot alone carry a Sixth Amendment claim," and that the importance of this factor increases with the length of the delay. *Id.* at 656. As discussed above, the delay of 17 months and 20 days before trial in this case did not stretch far beyond the bare minimum needed to trigger the speedy trial analysis in the first place. While a "grossly excessive" delay may tilt the prejudice factor in the defendant's favor even without affirmative proof of particularized prejudice, *see Rashad*, 300 F.3d at 41, the length of the delay in this case does not support that conclusion. Moreover, Lara did not call any witnesses or present any evidence in his own defense at trial. Thus, Lara has not shown that any memory lapses on the part of a witness—and Lara has not pointed to any specific instances—would be likely to impair his defense, as the witness would have been called by the Government. *Cf. United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting that defendant failed to demonstrate prejudice to his defense in part because he "did not call any witnesses or present any evidence").

Finally, any suggestion of prejudice resulting from pretrial incarceration is undermined by the fact that Lara was convicted, and he will receive credit against his sentence for the time he served in pretrial incarceration. *See Casas*, 425 F.3d at

34 (finding no prejudice where "the time served was credited against the sentences [defendants] received upon conviction").

Because Lara has not demonstrated that he was prejudiced by the delay, the fourth factor weighs in favor of the Government.

**5. Weighing of Factors**

As discussed above, the third factor is the only one that strongly weighs in Lara's favor in this analysis. The length of the delay in this case, while long enough to trigger the Constitutional analysis, was not grossly excessive in light of the complexity of the case, the extensive pre-trial motions, and the number of co-defendants. In addition, the pre-trial delay is primarily attributable to motions filed by Lara's co-defendants and by Lara's motion to sever, and cannot be held against the Government. Finally, Lara did not suffer any prejudice as a result of the delay. For these reasons, the four *Barker* factors, considered together, weigh against a finding that Lara's Sixth Amendment right to a speedy trial was violated.

### III. CONCLUSION

For the foregoing reasons, Lara's Motion to Dismiss for Speedy Trial Violation (ECF No. 301) is **DENIED**.

**SO ORDERED.**

**Dated this 4th day of August 2017**

                                                            /s/ JON D. LEVY
                                                            **U.S. DISTRICT JUDGE**